**22-____**

IN THE

# United States Court of Appeals

**FOR THE THIRD CIRCUIT**

CONSUMER FINANCIAL PROTECTION BUREAU,

*Plaintiff-Respondent,*

—v.—

NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST, *et al.*,

*Defendants-Petitioners.*

ON PETITION FOR APPEAL FROM THE DECEMBER 13, 2021 ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

## PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b)

MICHAEL A. WEIDINGER
MEGAN IX BRISON
PINCKNEY, WEIDINGER, URBAN & JOYCE
2 Mill Road, Suite 204
Wilmington, Delaware 19806
(302) 504-1497

*Attorneys for Defendants*

JOSHUA KIPNEES
GEORGE A. LOBIONDO
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Petitioner Ambac Assurance Corp.*

ALLYSON B. BAKER
MEREDITH L. BOYLAN
SAMEER P. SHEIKH
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC 20036 (202) 551-1700

*Attorneys for Petitioner Transworld Systems, Inc.*

## PETITIONERS NATIONAL COLLEGIATE STUDENT LOAN TRUSTS' CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Rule 26.1, the undersigned counsel for Petitioners National Collegiate Master Student Loan Trust I, National Collegiate Student Loan Trust ("NCSLT") 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4 (collectively, the "Trusts") certifies that the Trusts (1) are Delaware statutory trusts that have no parent corporation, and (2) there are no publicly-held corporations that hold 10% or more of the stock of any of the Trusts.

February 21, 2022 By: /s/ Michael Weidinger

## PETITIONER AMBAC'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Rule 26.1, the undersigned counsel for Petitioner Ambac Assurance Corporation ("Ambac") certifies that Ambac (1) is a wholly owned subsidiary of Ambac Financial Group, Inc., and (2) there are no other parent corporations or publicly-held corporations that hold 10% or more of its stock.

February 21, 2022 By: /s/ Joshua Kipnees

## PETITIONER TSI'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Rule 26.1, the undersigned counsel for Petitioner Transworld Systems Inc. ("TSI") certifies that TSI (1) is a wholly owned subsidiary of Aston Acquisition Corp., and (2) no publicly held corporation holds 10% or more of its stock.

February 21, 2022 By: /s/ Allyson B. Baker

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENTS** ..... i

**TABLE OF AUTHORITIES** ..... iv

**QUESTIONS PRESENTED AND PRELIMINARY STATEMENT** ..... 1

**STATEMENT OF THE CASE** ..... 4

- **A.** The CFPB's Enforcement Authority Over Covered Persons ..... 4
- **B.** The CFPB's Structural Constitutional Violation And Untimely Ratification Attempt ..... 5

**LEGAL STANDARD** ..... 9

**ARGUMENT** ..... 10

**I. THIS COURT SHOULD REVIEW THE DISTRICT COURT'S "COVERED PERSONS" RULING** ..... 10

- **A.** The "Covered Persons" Question Is Controlling ..... 11
- **B.** There Is Substantial Ground For Difference Of Opinion ..... 12
- **C.** An Appeal May Materially Advance The Lawsuit ..... 14

**II. THIS COURT SHOULD REVIEW THE DISTRICT COURT'S RULING ELIMINATING THE RATIFICATION REQUIREMENT** ..... 14

- **A.** The Ratification Question Is Controlling ..... 15
- **B.** There Is Substantial Ground For Difference Of Opinion ..... 16
- **C.** An Appeal May Materially Advance The Lawsuit ..... 21

**CONCLUSION** ..... 22

**CERTIFICATE OF COMPLIANCE** ..... 24

**CERTIFICATE OF SERVICE** ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BCFP v. Chou Team Realty LLC*,
2020 WL 5540179 (C.D. Cal. Aug. 21, 2020) ....................18

*BCFP v. Citizens Bank, N.A.*,
504 F. Supp. 3d 39 (D.R.I. 2020) ....................18

*BCFP v. Fair Collections & Outsourcing, Inc.*,
2020 WL 7043847 (D. Md. Nov. 30, 2020) ....................20

*CFPB v. Access Funding, LLC,*
2021 WL 2915118 (D. Md. July 12, 2021) ....................18, 20, 21

*CFPB v. ITT Educ. Servs., Inc.,*
219 F. Supp. 3d 878 (S.D. Ind. 2015) ....................13

*CFPB v. Law Offices of Crystal Maroney*,
2021 WL 2315225 (2d Cir. June 4, 2021) ....................17

*CFPB v. Navient Corp.*,
522 F. Supp. 3d 107 (M.D. Pa. 2021) ....................15, 16, 18

*CFPB v. Navient Corp.*,
2021 WL 772238 (M.D. Pa. Feb. 26, 2021) ....................18

*Collins v. Yellen*,
141 S. Ct. 1761 (2021) ....................*passim*

*Ford Motor Credit Co. v. S. E. Barnhart & Sons, Inc.*,
664 F.2d 377 (3d Cir. 1981) ....................14

*Freund v. Republic of France*,
592 F. Supp. 2d 540 (S.D.N.Y. 2008) ....................13

*FTC v. Wyndham Worldwide Corp.*,
10 F. Supp. 3d 602 (D.N.J. 2014) ....................12

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974) ....................10, 11, 15

*Klinghoffer v. S.N.C. Achille Lauro*,
921 F.2d 21 (2d Cir. 1990) ....................12

*McGillicuddy v. Clements*,
746 F.2d 76 (1st Cir. 1984)....................12

*Microsoft Corp. v. Baker*,
137 S. Ct. 1702 (2017)....................9

*Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*,
2011 WL 1044864 (E.D. Pa. Mar. 23, 2011) ....................12

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ....................12

*Seila Law v. CFPB*,
140 S. Ct. 2183 (2020)....................*passim*

*United States v. Nagarwala*,
438 F. Supp. 3d 821 (E.D. Mich. 2020) ....................13

**Statutes**

12 U.S.C. § 5481 ....................5, 10

12 U.S.C. § 5531(a) ....................4

28 U.S.C. § 1292(b) ....................*passim*

Defendants[1] (the "Trusts") and Intervenors[2] (collectively, "Petitioners") respectfully submit this Petition pursuant to 28 U.S.C. § 1292(b) for permission to raise two questions[3] certified by the District Court for interlocutory appeal.

## QUESTIONS PRESENTED AND PRELIMINARY STATEMENT

This enforcement action brought by the Consumer Financial Protection Bureau ("CFPB" or "Bureau") is unprecedented in at least two respects. Never before has a court held that any entity—let alone a passive securitization vehicle—is subject to the CFPB's enforcement authority over "covered persons" under the Consumer Financial Protection Act ("CFPA") merely because that entity contracted with third parties that are subject to the CFPB's enforcement authority. Nor, in the wake of *Seila Law v. CFPB*, 140 S. Ct. 2183 (2020), has any CFPB enforcement action that was initiated while the agency was unconstitutionally structured been permitted to proceed absent valid ratification.

---

[1] Defendants are fifteen Delaware statutory trusts: National Collegiate Master Student Loan Trust I, National Collegiate Student Loan Trust ("NCSLT") 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4.

[2] "Intervenors" refers to Ambac Assurance Corporation and Transworld Systems Inc.

[3] Consistent with its stated position in the now-granted motion for certification, TSI's appeal is limited to the "covered persons" question.

The District Court (Bibas, J., sitting by designation) is the first nationwide to decide these issues in the CFPB's favor. Recognizing these are novel, controlling issues about which there can be substantial dispute, the District Court certified both issues for interlocutory appeal as follows:

- Under the Consumer Financial Protection Act, are the defendant Trusts "covered persons" subject to the Consumer Financial Protection Bureau's enforcement authority?

- After *Collins v. Yellen*, 141 S. Ct. 1761 (2021), did the Bureau need to ratify this suit before the statute of limitations ran out, having first filed it while the Bureau's director was improperly insulated from presidential removal?

Ex. A. This Court should accept these certified issues for interlocutory review.

On the first issue, the District Court acknowledged that it stood alone in concluding that passive securitization vehicles such as the Trusts qualify as "covered persons," on the theory that they "engage" in the servicing of loans through third-party sub-servicers that are not controlled by the Trusts. As the District Court held, this novel issue is dispositive, as the CFPB's alleged enforcement authority as to the Trusts hinges on the premise that the Trusts "engage" in covered activity within the meaning of the CFPA. Moreover, it is an issue of far-reaching consequence, as expanding the definition of "covered person" to capture passive securitization trusts would impermissibly expand the scope of the CFPA beyond the plain language of the statute. This expansive interpretation

would also upend the long-held expectations of the securitization industry and threatens the critical liquidity function it provides to borrowers.

On the second issue, the District Court's ruling was the first to hold that the CFPB need not ratify enforcement actions it filed while its structure violated the separation of powers. This ratification requirement was recognized by the Supreme Court in *Seila Law*, and endorsed both before and after *Seila Law* by the CFPB itself and courts nationwide. Indeed, the District Court (Noreika, J.) dismissed the CFPB's original complaint because the CFPB's attempted ratification occurred outside the statute of limitations and was therefore ineffective. However, after the CFPB filed an amended complaint and the case was reassigned, the District Court (Bibas, J.) held that the Supreme Court's intervening decision in *Collins v. Yellen* "announced a new rule" eliminating the ratification requirement—even though *Collins* involved a different agency, was decided only one year after *Seila Law*, and expressly stated that it was applying *Seila Law* rather than overruling it. This holding nullifies not only *Seila Law*'s central analysis, but also conflicts with the only other post-*Collins* decision to consider whether a CFPB enforcement proceeding initiated when the agency was unconstitutionally structured must be remedied through valid ratification.

Each of the certified questions readily meets the criteria for interlocutory appeal: each is controlling; there is substantial ground for disagreement with the

District Court's rulings; and reversal on either one would end this litigation. The petition should be granted.

## STATEMENT OF THE CASE

### A. The CFPB's Enforcement Authority Over Covered Persons

Defendants are fifteen Delaware statutory trusts created to facilitate the securitization of student loans originated by entities that are not parties to this action. Securitization of student loans serves to spread the risk of lending to third parties, thereby increasing borrower access to funding and reducing interest rates. Dkt. No. 73-1 at 3-4, 6.

The Trusts are passive special purpose vehicles; they do not have officers or employees, and all actions relating to the servicing and collection on the student loans in the Trusts are carried out by third-party loan servicers. Dkt. No. 362, Am. Compl. ¶ 29. It is further undisputed that the Trusts do not, and cannot, service loans or collect debt on their own.

On September 18, 2017, the CFPB initiated this enforcement action against the Trusts for alleged unfair or deceptive acts or practices under the CFPA in connection with lawsuits filed to collect on defaulted student loans in the Trusts. It is undisputed that the CFPB only has authority to bring this action if the Trusts meet the definition of "covered person[s]" under the statute. 12 U.S.C. § 5531(a); Dkt. No. 362, Am. Compl. ¶ 8. The CFPA defines a "covered person" as any

person that "engages in offering or providing a consumer financial product or service." 12 U.S.C. §§ 5481(6)(A), (25)(B).

The Bureau has alleged that the Trusts are "covered persons" because they purportedly "engage" in "servicing loans" and "the collection of debt." 12 U.S.C. § 5481(15)(A)(i), (x); Dkt. No. 362, Am. Compl. ¶ 8. Yet the CFPB does not allege that the Trusts themselves engaged in these activities—nor could it, since the Trusts have no employees or operations. Rather, the amended complaint admits that these actions were exclusively carried out by third party loan servicers who are themselves "covered persons." Dkt. No. 362, Am. Compl. ¶ 29. Nonetheless, the District Court held that the Trusts qualify as "covered persons" merely by virtue of indirect contractual relationships with these servicers. Moreover, it reached this conclusion despite several degrees of separation between the Trusts and the alleged covered activity—i.e., the Trusts (1) contracted with a special servicer, which (2) contracted with loan sub-servicers, which in turn (3) hired the attorneys that filed the collection lawsuits at issue. Ex. C at 7-10.

### B. The CFPB's Structural Constitutional Violation And Untimely Ratification Attempt

When the CFPB filed its complaint and simultaneously filed a motion for the District Court to approve a proposed consent judgment ("PCJ") ostensibly agreed-to by the Trusts, it was led by a holdover single director insulated from removal by

the President, which violated the Constitution's separation of powers.[4] *Seila Law*, 140 S. Ct. at 2197. In 2017, the Department of Justice agreed that the CFPB's structure was unconstitutional, and in 2018, the CFPB began procuring "ratifications" of at least four enforcement actions from its then-Acting Director Mulvaney, who by virtue of his "acting" status, was subject to removal without cause prior to *Seila Law*. Dkt. Nos. 359 at 11-12 n.7; 378 at 7. These ratifications, the CFPB contended, remedied the constitutional infirmity in those actions by confirming that they were proceeding with the approval of an Acting Director whom the President could remove. *Id.* However, the CFPB has conceded that Acting Director Mulvaney never ratified this action, even as he ratified various others during his tenure. Dkt. No. 348-1 at 40:7-10; 37:20-23; 38:21-23.

The Supreme Court decided *Seila Law* on June 29, 2020. The Court invalidated and severed the CFPA's unconstitutional removal restriction, but noted the CFPB's argument that, although the agency was admittedly unconstitutionally structured, its civil investigative demand should still be enforced because it had been ratified. 140 S. Ct. at 2208; *see also id.* at 2221 (Thomas, J., concurring in

---

[4] The filing of the action and the PCJ prompted seven parties to intervene to protect their contractual and financial interests that the PCJ would have adversely affected. Dkt. No. 95 at 1. In 2020, the District Court held that the attorney who purported to represent the Trusts and had executed the PCJ was not authorized to do so, and denied the CFPB's motion to approve the PCJ. Dkt. No. 272 at 1. Thereafter, the District Court ordered the parties to file any motions to dismiss.

part) (noting CFPB's concession that its actions were unconstitutional and describing its "ratification theory" for curing the constitutional injury). The Supreme Court thus remanded the case to the Ninth Circuit "to consider whether the civil investigative demand was validly ratified." *Id.* at 2211.

Following *Seila Law*, in July 2020, the CFPB belatedly filed a "Notice of Ratification" in this case, and argued that the case could proceed "***as a result of this ratification***." Dkt. No. 308 at 1 (emphasis added). Thereafter, Petitioners moved to dismiss the CFPB's original complaint, arguing among other things that (i) the CFPB's structure violated the separation of powers when the CFPB commenced this action, and (ii) the CFPB's ratification attempt in July 2020 was untimely and ineffective. Dkt. No. 301 at 10-16. In opposition, the CFPB conceded both the constitutional violation and that it had not ratified this action within the three-year limitations period. Ex. C at 4. But the CFPB insisted that its ratification attempt "provide[d] the remedy for the Constitutional violation" in its actions. Dkt. No. 320 at 7.

Judge Noreika granted Petitioners' motion and dismissed the CFPB's complaint. Dkt. No. 359. Judge Noreika reasoned that the CFPB conceded the constitutional defect in its structure and admitted that its ratification attempt occurred after the statute of limitations had expired, requiring dismissal. *Id.* at 9-10. Although Judge Noreika did not reach Petitioners' argument that the complaint

should be dismissed because the Trusts are not "covered persons" as defined in the CFPA, she expressed "some doubt that the Trusts are 'covered persons' under the plain language of the statute." *Id.* at 6.

The CFPB filed an amended complaint, which expressly acknowledged that it did not attempt to ratify this action until July 2020, and which pled no facts that would permit the District Court to conclude that this ratification attempt was timely. Dkt. No. 362, Am. Compl. ¶ 24. Petitioners again moved to dismiss. Dkt. No. 367 at 7.

While that motion was pending, the Supreme Court decided *Collins v. Yellen*, 141 S. Ct. 1761 (2021). *Collins* concerned a challenge to a Federal Housing Finance Agency ("FHFA") action that, unlike the filing of this case, was first taken by an acting director who was removable at will by the President. *Id.* at 1781. Plaintiff shareholders argued that since certain FHFA directors were unconstitutionally insulated from removal, certain actions of the FHFA were *void ab initio* and entitled them to the return of millions of dollars in dividend payments, among other things. *Id.* at 1787. The Supreme Court rejected plaintiffs' argument, holding that actions taken by unconstitutionally insulated officers are not necessarily void *ab initio*. *Id.* However, the Court also noted it was not foreclosing "entitlement to retrospective relief." *Id*. at 1788. As Justice Gorsuch explained, the *Collins* Court's remedies analysis was a "product of its unique

context," i.e., "the prospect that affording a more traditional remedy…could mean unwinding or disgorging hundreds of millions of dollars that have already changed hands." 141 S. Ct. at 1799 (Gorsuch, J., concurring in part).

On December 13, 2021, following reassignment of this case, Judge Bibas denied Petitioners' motion to dismiss the amended complaint. Ex. C. Judge Bibas held that the Supreme Court's decision in *Collins* "announced a new rule" that agency actions "do not need to be 'ratified,' unless a plaintiff can show that the removal provision harmed him." Ex. C at 2, 5-6.

Petitioners timely filed a motion to certify for interlocutory appeal two aspects of the District Court's decision: (1) that the Trusts qualify as "covered persons" subject to the CFPB's enforcement authority for UDAAP violations, and (2) that the CFPB was not required to ratify this suit, even though it was initiated when the agency was unconstitutionally structured. The District Court granted the motion and certified both issues for interlocutory appeal. Ex. B at 2.

## **LEGAL STANDARD**

Under 28 U.S.C. § 1292(b), this Court has discretion to grant a petition seeking permission to appeal an interlocutory order. *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1708 (2017). The purpose of appellate review under these circumstances is to avoid "a wasted protracted trial if it could early be determined that there might be no liability," such as in cases in which a pretrial order

"erroneously overrul[es] a defense going to the right to maintain the action." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974).

Three factors enumerated in Section 1292(b) guide the exercise of this Court's discretion: whether the order sought to be appealed involves (1) a controlling question of law (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the termination of the litigation. *See id.* All three factors are met for both certified issues.

## ARGUMENT

### I. THIS COURT SHOULD REVIEW THE DISTRICT COURT'S "COVERED PERSONS" RULING

The CFPB's purported authority to bring this enforcement action is predicated on the allegation that the Trusts qualify as "covered person[s]" under the CFPA. The CFPA defines a "covered person" as one that "engages in offering or providing a consumer financial product or service." 12 U.S.C. § 5481(6)(A). According to the amended complaint, the Trusts are covered persons because they "engage" in "servicing loans" and "the collection of debt." *Id.* § 5481(15)(A)(i), (x); Dkt. No. 362, Am. Compl. ¶ 8.

But as passive securitization vehicles, the Trusts do not themselves "engage" in ***any*** debt collection or loan servicing activities. Instead, the amended complaint alleges that these activities were carried out by third-parties which the Trusts

themselves do not direct, oversee, or control. Yet the District Court found that the Trusts' contractual arrangement with a special servicer—which, in turn, contracted with third-party sub-servicers who hire attorneys who file collection lawsuits—meant that the Trusts themselves "engage" in servicing and thus count as covered persons. Ex. C at 3, 8. This expansive construction of "engage" departs from numerous other courts that have interpreted the same term, and the CFPB's jurisdiction over the Trusts rises and falls on this construction. This certified question meets all three Section 1292(b) factors.

### A. The "Covered Persons" Question Is Controlling

Under the first Section 1292(b) factor, a question of law is "controlling" if (1) an erroneous ruling on the legal issue would be reversible error, or (2) it is "serious to the conduct of the litigation, either practically or legally." *Katz*, 496 F.2d at 755.

The Order involves a central and controlling question of law: whether entities that do not themselves participate in any of the covered activities delineated by statute are "covered persons." As the District Court recognized, the certified question is dispositive because if "the Trusts did not 'engage in' collecting debt or servicing loans, the Bureau cannot sue them." Ex. B at 4. If this Court confirms that the Trusts cannot qualify as a "covered person," reversal and dismissal must follow.

### B. There Is Substantial Ground For Difference Of Opinion

Under the second factor, a substantial ground for difference of opinion exists "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also McGillicuddy v. Clements*, 746 F.2d 76, 77 n.1 (1st Cir. 1984) (certification is appropriate for "pivotal questions of law not settled by controlling authority").

The District Court correctly observed that it was the "first … to decide whether the Bureau may bring enforcement actions against creditors like the Trusts who contract out debt collection and loan servicing." Ex. B at 4-5. As a question of first impression, this ruling is appropriate for certification. *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (issues that "are difficult and of first impression" generate "substantial grounds for difference of opinion"); *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, No. 05-281, 2011 WL 1044864, at *3 (E.D. Pa. Mar. 23, 2011); *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 632-35 (D.N.J. 2014).

Aside from the novelty of the certified question, reasonable minds could readily disagree with the conclusion that the Trusts qualify as "covered persons" that "engage" in debt collection and loan servicing by contracting with sub-servicers. Indeed, Judge Noreika, who previously presided over this case,

expressed "some doubt" that the Trusts are covered persons "under the plain language of the statute," and declined to reach the issue only after dismissing the action on other grounds. Ex. B at 5; Dkt. No. 359 at 6.

Moreover, other courts interpreting the meaning of "engage," including in the specific context of the CFPA, have construed the term far more narrowly than the District Court did in this case. The District Court opined that "engage" is "broad enough to encompass actions taken on a person's behalf by another, at least where that action is central to his enterprise." *See* Ex. C at 8. However, in *CFPB v. ITT Educ. Servs. Inc.*, the CFPB's allegations that the defendant had offered or provided student loans "***through certain***" third-party lenders, and did not "itself offer" those loans, were insufficient to establish that the defendant had "engaged" in providing loans within the meaning of the CFPA. 219 F. Supp. 3d 878, 909 (S.D. Ind. 2015) (emphasis in original); *see also Freund v. Republic of France*, 592 F. Supp. 2d 540, 556 (S.D.N.Y. 2008) (the verb "engage" requires an "affirmative decision by the entity" to "conduct [the] activity"), *aff'd* 391 F. App'x 939 (2d Cir. 2010); *United States v. Nagarwala*, 438 F. Supp. 3d 821, 826 (E.D. Mich. 2020) (determining that "if one is engaged in an activity, one is actively involved in it, i.e., doing the activity . . . one cannot engage in" the activity by having others perform it). Under any of these definitions, the Trusts do not "engage" in any

servicing or collection activities, and therefore do not qualify as "covered persons."[5]

Finally, this is an issue of nationwide significance: The District Court's decision to expand the CFPB's enforcement authority to passive securitization trusts has created uncertainty for market participants, which rely on longstanding rules and principles establishing that securitization trusts are not liable for the acts of third-party servicers and sub-servicers. *See* Dkt. No. 311 at 5.

### C. An Appeal May Materially Advance The Lawsuit

Section 1292(b) "is designed to allow for early appeal of a legal ruling when resolution of the issue may provide more efficient disposition of the litigation." *Ford Motor Credit Co. v. S. E. Barnhart & Sons, Inc.*, 664 F.2d 377, 380 (3d Cir. 1981). Here, as the District Court explained, if this ruling is reversed on appeal, "this suit would stop there." Ex. B at 5. Yet, absent interlocutory appeal, the parties will engage in costly and time-consuming litigation concerning claims that the CFPB has no statutory authority to bring.

## II. THIS COURT SHOULD REVIEW THE DISTRICT COURT'S RULING ELIMINATING THE RATIFICATION REQUIREMENT

The District Court's novel reading of *Collins* cannot be squared with *Seila Law* or its progeny. Appellate review and reversal on this issue would clarify the

---

[5] Notably, the District Court expressly rejected the premise that its holding relied on principles of vicarious liability. Dkt. No. 380 at 10.

split among district courts created by the decision below, and would end this litigation.

### A. The Ratification Question Is Controlling

The "controlling" inquiry does not require that reversal would lead to dismissal, but only that the issue be "serious to the conduct of the litigation." *See* *Katz*, 496 F.2d at 755. Either way, the bar is cleared here: as the District Court recognized, "If I am wrong [that *Collins* eliminated the ratification requirement for unconstitutional CFPB actions] and the Bureau's initial filing of this suit was invalid … [t]hat would make the Bureau's suit untimely, ending this case."[6] Ex. B at 6. Indeed, every court to have addressed the ratification issue post-*Seila Law* has recognized that ratification is dispositive. *See, e.g.*, Dkt. No. 359 at 14 (ratification after the statute of limitations expired was "too late to be effective"); *CFPB v. Navient Corp.*, 522 F. Supp. 3d 107, 117 (M.D. Pa. 2021) ("case would be subject to immediate dismissal" if the CFPB were not entitled to equitable tolling of the statute of limitations in light of its untimely ratification).[7]

---

[6] With this statement, Judge Bibas rejected the CFPB's alternative argument that it is entitled to equitable tolling. That argument was also rejected by Judge Noreika, who presided over this case before it was reassigned to Judge Bibas. *See* Dkt. No. 359 at 11-14.

[7] In *Navient*, the district court applied the ratification requirement but also agreed to equitably toll the statute of limitations based on different facts not present here. *See* Dkt. No. 336 at 2. The *Navient* district court certified its ruling for interlocutory review, but this Court declined to consider Navient's appeal after the

The ratification issue is also "serious" as a practical matter. If the Order is reversed on appeal, the District Court and parties would avoid further wasteful litigation in this case, where several non-parties were forced to intervene and have already engaged in years of unnecessary litigation to invalidate the CFPB's unauthorized PCJ. *See* Dkt. No. 272.

### B. There Is Substantial Ground For Difference Of Opinion

In *Seila Law*, the Supreme Court tasked lower courts to consider whether the CFPB's attempts to ratify enforcement actions initiated when the agency was unconstitutionally structured were "legally sufficient to cure the constitutional defect." 140 S. Ct. at 2208. The Court remanded *Seila Law* only after considering, and expressly rejecting, arguments that "such a remand would be futile," as it would have been if ratification were irrelevant. 140 S. Ct. at 2208.

*Seila Law* thus sets forth the proper framework for considering whether enforcement actions initiated when the CFPB was unconstitutionally structured can proceed, or must be dismissed. Indeed, the CFPB itself has repeatedly conceded

---

CFPB argued that the tolling ruling was "fact-based and discretionary." *See Navient*, No. 21-8011 (3d Cir.), Dk. No. 8 at 8. By contrast, the District Court's rulings here were indisputably on matters of law, such that certification is warranted. And, notably, this Court denied Navient's petition ***after*** *Collins* was decided, leaving in place the lower court's ruling that the CFPB is required to ratify its unconstitutionally initiated enforcement actions—a result at odds with the District Court's decision in this case.

both (a) the unconstitutionality of its prior enforcement actions and (b) the need for ratification to cure the constitutional infirmity in those actions. Dkt. No. 320 at 7 (CFPB arguing in this case that "ratification itself provides the remedy for the Constitutional violation"); *Seila Law*, 140 S. Ct. at 2220-21 (Thomas, J., concurring in part) ("The CFPB's first Director, Director Cordray, issued a civil investigative demand to Seila and initiated the enforcement action [in 2017]. The CFPB has conceded that these actions were unconstitutional."); CFPB Reply Br., *Seila Law v. CFPB*, No. 19-7, 2020 WL 774433, at *23 (Feb. 14, 2020) (CFPB arguing that "the courts below must resolve whether the ratification was proper"); Suppl. En Banc Br. of CFPB, *CFPB v. All American Check Cashing, Inc.*, No. 18-60302, 2020 WL 5231790, at *3 (5th Cir. Aug. 31, 2020) (CFPB conceding that it "filed its Complaint against Defendants before the Supreme Court had declared the for-cause removal provision unconstitutional. This injured Defendants by subjecting them to the authority of an official unconstitutionally insulated from Presidential Control");[8] Appellee Br. at 31, *CFPB v. Law Offices of Crystal Maroney*, No. 20-3471, 2021 WL 2315225, at *31 (2d Cir. June 4, 2021) (CFPB arguing that "courts have long recognized ratification as a remedy for an initial defect in government-agency action, including the filing of an enforcement suit");

[8] *All American Check Cashing* was argued to the Fifth Circuit *en banc* on January 19, 2022 and is presently *sub judice*.

D.I. 32, Pl.'s Suppl. Br. at 3, *BCFP v. Citizens Bank, N.A.*, No. 20 Civ 44, 2020 WL 6042146 (D. R.I. Aug. 10, 2020) (CFPB arguing, "When a constitutional defect taints an enforcement action filed by an agency, the agency can cure that taint by ratifying the action"); *CFPB v. Navient Corp.*, No. 17 Civ. 101, 2021 WL 772238, at *5 (M.D. Pa. Feb. 26, 2021) (court noting that "the CFPB has conceded the necessity of ratification").

Based on *Seila Law* and the CFPB's own arguments, every single district court—besides one of the two judges that presided over this case below—has concluded that valid ratification is required to salvage the Bureau's enforcement proceedings that were filed when the agency was unconstitutionally structured. *See, e.g.*, *CFPB v. Access Funding*, 2021 WL 2915118, at *16 (D. Md. July 12, 2021) ("In light of *Seila Law*…the question before this Court is whether that defect has been cured by ratification or whether dismissal is required"); *Navient*, 522 F. Supp. 3d at 111 ("[I]n the absence of an equitable remedy, an application of the principles of ratification would require dismissal of the CFPB's action"); *BCFP v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39, 56 (D.R.I. 2020) ("[W]hen an aspect of the directorship is declared unconstitutional, pending cases must be ratified by a constitutionally acceptable leader."); *BCFP v. Chou Team Realty LLC*, 2020 WL 5540179, at *3 (C.D. Cal. Aug. 21, 2020) ("Any constitutional deficiency … was

cured by the Supreme Court severing the removal provision from the rest of the organic statute, coupled with the Director's July 9 ratification of the action.").

*Collins* did not purport to change this settled framework or overrule *Seila Law*. Indeed, although the District Court concluded that *Collins* "announced a new rule," *Collins* itself explained that it was merely effecting a "straightforward application" of *Seila Law*. *Compare* Ex. C at 2, *with Collins*, 141 S. Ct. at 1783-84. Moreover, there is a dispositive factual difference in the two cases that explains why ratification is required here but not in *Collins*. Unlike in *Seila Law*, the agency action at issue in *Collins* (the "third amendment") had been adopted by an acting director of the FHFA who, by virtue of his "acting" status, was removable by the President at will. *Id.* at 1787. Because that acting director was at all times subject to Presidential removal, there was no separation-of-powers violation when the disputed agency action was born. *See id.* ("We have already explained that the Acting Director who adopted the third amendment was removable at will. That conclusion defeats the shareholders' argument for setting aside the third amendment in its entirety." (citation omitted)). Thus, the Court reasoned, the shareholders' constitutional challenge only applied to actions taken later by unconstitutionally insulated directors to implement the third amendment, all of which were downstream of the initial act. *Id.* ("We therefore consider the shareholders' contention about remedy with respect to only the actions that

confirmed Directors have taken to ***implement*** the third amendment during their tenures.").

This action is different. Unlike in *Collins*, this case was marred by a constitutional defect from its inception. *See supra* p. 5-6. The CFPB itself has described enforcement actions like this as having been "taint[ed]" with a "constitutional defect," conceded the injury such a defect causes, and forcefully argued for ratification as the appropriate remedy. *See supra* p. 17-18. Put another way, the core problem with this case did not exist in *Collins*—so *Collins* did not hold (and cannot have held) that such defects need not be ratified. *See BCFP v. Fair Collections & Outsourcing, Inc.*, 2020 WL 7043847, at *2 (D. Md. Nov. 30, 2020) ("*Collins v. Mnuchin* does not involve an action that was subsequently ratified and, thus, the question of ratification is not at issue in that case[.]").[9] Critically, the only other post-*Collins* court to consider an unconstitutionally initiated CFPB enforcement proceeding ***reaffirmed*** (while citing *Collins*) that valid ratification remains a requirement. *See CFPB v. Access Funding, LLC*, 16 Civ. 3759, 2021 WL 2915118, at *16 (D. Md. July 12, 2021) (dispositive issue is

---

[9] Consistently, the CFPB argued before *Collins* was decided that *Collins* would have no bearing on the dispositive ratification issue in its enforcement actions, because "the issue of ratification is not presented in *Collins*," which did "not involve a ratified agency action." *E.g.*, *BCFP v. Forster & Garbus, LLP*, 19 Civ. 2928 (E.D.N.Y.), D.I. 34 at 2; D.I. 41 at 2.

whether the conceded constitutional "defect has been cured by ratification or whether dismissal is required").[10]

Given all of these factors—*Seila Law*'s instruction to consider the legal sufficiency of ratification; the CFPB's own view that this action was constitutionally defective and salvaged by ratification; *Collins*'s recognition that *Seila Law* remains good law; the pendency of appeals in other Circuits considering the role of ratification in CFPB actions (Ex. B at 7-8); the split among district courts as to whether *Collins* has any relevance to unconstitutionally initiated CFPB enforcement proceedings; and the District Court's own recognition that "there is room for reasonable disagreement" regarding "the need for ratification after *Collins*" (Ex. B at 8)—there are substantial grounds to disagree with the District Court's conclusion that "[t]here was no need for the CFPB to ratify this suit." Ex. C at 5.

**C. An Appeal May Materially Advance The Lawsuit**

An interlocutory appeal may materially advance this case because the CFPB has conceded that it did not timely ratify this action. Ex. C at 4. A reversal on appeal would therefore result in this case's dismissal. Ex. B at 8 ("If the Third

[10] The CFPB has incorrectly claimed that *Access Funding* did not consider whether the CFPB's enforcement action could proceed without ratification, but the court there held that ratification was required. *Access Funding*, 2021 WL 2915118, at *18.

Circuit disagrees with my reading of *Collins*, I must dismiss this suit as untimely, ending this case.”).

## CONCLUSION

For the foregoing reasons, the Petition for leave to take an interlocutory appeal of the District Court’s certified order should be granted.

Respectfully submitted,

By: /s/ *Michael A. Weidinger*
Michael A. Weidinger
Megan Ix Brison
PINCKNEY, WEIDINGER, URBAN & JOYCE
2 Mill Road, Suite 204
Wilmington, DE 19806
(302) 504-1497
mweidinger@pwujlaw.com
mixbrison@pwujlaw.com
*Attorneys for Defendants*

/s/ *Joshua Kipnees*
Joshua Kipnees
George A. LoBiondo
PATTERSON BELKNAP WEBB &TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
jkipnees@pbwt.com
globiondo@pbwt.com
*Attorneys for Ambac Assurance Corp.*

/s/ *Allyson B. Baker*

Allyson B. Baker
Meredith L. Boylan (admission forthcoming)
Sameer P. Sheikh
PAUL HASTINGS LLP
2050 M St., NW
Washington, DC 20036
(202) 551-1700
AllysonBaker@paulhastings.com
MeredithBoylan@paulhastings.com
SameerSheikh@paulhastings.com
*Attorneys for Transworld Systems, Inc.*

DATED: February 21, 2022

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1), because it contains 5,058 words, as determined by the word-count function of Microsoft Word 2010, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

/s/ *Joshua Kipnees*

Dated: February 21, 2022

# CERTIFICATE OF SERVICE

On this 21st day of February, 2022, I caused the foregoing Petition for Permission to Appeal to be electronically filed with the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system, and electronically served the Petition via email to the following counsel of record for Plaintiff-Respondent Consumer Financial Protection Bureau:

Gabriel Hopkins
gabriel.hopkins@cfpb.gov

Stephen Jacques
stephen.jacques@cfpb.gov

Tiffany Hardy
tiffany.hardy@cfpb.gov

/s/ *Joshua Kipnees*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CONSUMER FINANCIAL
PROTECTION BUREAU,

*Plaintiff*,

v.

No. 1:17-cv-1323-SB

NATIONAL COLLEGIATE MASTER
STUDENT LOAN TRUST et al.

*Defendants*.

**ORDER**

1. I **GRANT** Defendants' Motion to Certify an Interlocutory Appeal [D.I. 383]. I thus certify the following two questions to the United States Court of Appeals for the Third Circuit:

    - Under the Consumer Financial Protection Act, are the defendant Trusts "covered persons" subject to the Consumer Financial Protection Bureau's enforcement authority?

    - After *Collins v. Yellen*, 141 S. Ct. 1761 (2021), did the Bureau need to ratify this suit before the statute of limitations ran out, having first filed it while the Bureau's director was improperly insulated from presidential removal?

2. I **STAY** this case pending the Defendants' interlocutory appeal to the Third Circuit.

Dated: February 11, 2022

UNITED STATES CIRCUIT JUDGE

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CONSUMER FINANCIAL
PROTECTION BUREAU,

*Plaintiff*,

v.

No. 1:17-cv-1323-SB

NATIONAL COLLEGIATE MASTER
STUDENT LOAN TRUST et al.

*Defendants*.

---

Colin T. Reardon, Gabriel S.H. Hopkins, Jane M.E. Peterson, Stephen C. Jacques, Tiffany Hardy, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, D.C.

*Counsel for Plaintiff*.

Megan Ix Brison, Michael A. Weidinger, PINCKNEY, WEIDINGER, URBAN & JOYCE LLC, Wilmington, DE.

*Counsel for Defendants*.

---

**MEMORANDUM OPINION**

February 11, 2022

---

BIBAS, *Circuit Judge*, sitting by designation.

Ordinarily, parties cannot appeal until a district court enters a final judgment. But if their case raises important and dispositive legal issues, they may seek permission to appeal early. This enforcement action falls into that rare category.

The parties' dispute raises two novel questions: What is the scope of the Consumer Financial Protection Bureau's enforcement authority? And is ratification required if a federal agency files suit while it is unconstitutionally structured? I answered both questions in denying a motion to dismiss, finding that the Bureau had authority to bring this suit and that it did not need to ratify. But the stakes are high—if I am wrong about either issue, this litigation must end now. So I certify both questions for interlocutory appeal.

## I. BACKGROUND

In 2017, the Bureau sued the National Collegiate Loan Trusts for engaging in forbidden debt-collection and litigation practices. D.I. 362 ¶¶ 1–2. Late last year, I denied the Trusts' motion to dismiss that enforcement action. Mem. Op., D.I. 380.

Back then, the Trusts argued that the Bureau lacked authority to sue them under the Consumer Financial Protection Act. And even if it had that authority, the Trusts claimed, the suit was untimely: the Bureau had filed its complaint while it was unconstitutionally structured, so it needed to ratify the suit after it was restructured and before the statute-of-limitations clock ran out. Yet it failed to do so. *See* D.I. 367.

I rejected those arguments. But now the Trusts ask me to certify both issues to the Third Circuit for an interlocutory appeal. Certification is appropriate only if "exceptional circumstances justify a departure from the basic policy of postponing

appellate review until after entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). Thus, I may not grant the Trusts' request unless they meet three requirements:

- they seek to appeal from an order that "involves a controlling question of law"
- about which there is "substantial ground for difference of opinion," and
- their appeal would "advance the ultimate termination of the litigation."

28 U.S.C. § 1292(b). "The burden is on the [Trusts] to demonstrate that all three requirements are met." *Litgo N.J., Inc. v. Martin*, 2011 WL 1134676, at *2 (D.N.J. Mar. 25, 2011).

That is a high bar. But the Trusts meet it, so I certify two questions to the Third Circuit for an interlocutory appeal.

## II. I CERTIFY THE STATUTORY QUESTION

The first question that the Trusts ask me to certify is whether they are "covered persons" subject to the Bureau's enforcement authority. D.I. 384, at 16. In other words, were they "engage[d] in offering or providing … consumer financial product[s] or service[s]," including "servicing loans" and "collecting debt"? 12 U.S.C. § 5481(6), (15)(A)(i), (x).

In denying the Trusts' motion to dismiss, I found that they were. Mem. Op., D.I. 380, at 7–10. The Trusts own a large tranche of student debt. And to collect that debt, they "engaged in" loan servicing and debt collection through third-party servicers. True, third parties, not the Trusts, collected the debt and serviced the loans. But the

loan servicing and debt collection were crucial to the Trusts' business and could not have happened without their say-so. *Id.* at 8–9. And the statutory language is "broad enough to encompass actions taken on a person's behalf by another, at least where that action is central to his enterprise." *Id.* at 8.

But there is room for reasonable disagreement. Plus, a contrary reading of the statute would change the outcome of this lawsuit. So I find that the § 1292(b) factors favor certifying the issue for an interlocutory appeal.

*1. Controlling question of law.* "[C]ontrolling question[s] of law" are important to the case and include those issues that "if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974). Here, the statutory-interpretation question is key: It determines whether this lawsuit may proceed against the Trusts. If the Trusts did not "engage in" collecting debt or servicing loans, the Bureau cannot sue them.

*2. Substantial ground for difference of opinion.* There is "substantial ground" for a difference of opinion if there is "genuine doubt … as to the correct legal standard." *N.J. Dep't of Treasury v. Fuld*, 2009 WL 2905432, at *2 (D.N.J. Sept. 8, 2009). That doubt may be caused by "the absence of controlling law on a particular issue," including where there are "statutory interpretation" questions that are "novel and complex." *Id.* (quotation marks omitted).

Here, the statutory-interpretation question is "novel" and there is no controlling precedent. I was the first judge to decide whether the Bureau may bring enforcement actions against creditors like the Trusts who contract out debt collection and loan

servicing. And earlier in this litigation, before the case was assigned to me, Judge Noreika expressed "some doubt" that the Trusts are covered persons "under the plain language of the statute." D.I. 359, at 6.

*3. Advancing termination of the litigation.* An appeal "materially advance[s]" the litigation if it would "eliminate the need for a trial." *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994). That is so here. If the Third Circuit reverses on appeal and the Supreme Court does not intervene, this suit would stop there.

## III. I Also Certify the Constitutional Question

The Trusts ask me to certify a second question: whether the Bureau needed to ratify this suit before the statute of limitations ran out, having first filed it while the agency director was improperly insulated from presidential removal.

In denying the Trust's motion to dismiss, I held that there was no need for the Bureau to ratify its suit. D.I. 380, at 5. Though the suit was filed while the agency's director was unconstitutionally insulated, that did not mean the filing was invalid.

My holding relied on the Supreme Court's recent decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021). There, the Court held that an unconstitutional *removal* restriction does not invalidate agency action so long as the agency head was properly *appointed*. *Id.* at 1787. And if agency action is valid, it need not need be ratified. *Id.* at 1788. Thus, because the Bureau's director was properly appointed, its filing of this suit was enough to stop the limitations clock. *See* Mem. Op., D.I. 380, at 5 (applying *Collins* to this case in more detail).

Still, *Collins* is a very recent Supreme Court decision and lower courts have not yet hashed out its scope. If my reading is mistaken, I must dismiss this suit as untimely. Thus, the § 1292(b) factors support certifying the question for interlocutory appeal.

*1. Controlling question of law*. Reading *Collins* correctly is important to this case. *Katz*, 496 F.2d at 755. If I am wrong and the Bureau's initial filing of this suit was invalid, then it did not sue the Trusts before the statute of limitations ran out. *See* Mem. Op., D.I. 359, at 10−14 (holding that any ratification came too late to save this suit). That would make the Bureau's suit untimely, ending this case.

*2. Substantial ground for difference of opinion*. Plus, one can reasonably disagree about the scope of *Collins*. That case clarified the law. Before it was decided, courts saw actions brought by improperly insulated agency heads as "ultra vires" and so void. 141 S. Ct. at 1795 (Gorsuch, J., concurring in part). To give those actions legal force, agencies had to ratify them. *See, e.g.*, *CFPB v. Navient Corp.*, 522 F. Supp. 3d 107, 111 (M.D. Pa. 2021) (requiring ratification for a suit to proceed because the Bureau had filed it while the agency was unconstitutionally structured). But *Collins* rejected that prevailing view. The Court explained that actions taken by an improperly insulated director are not "void" and do not need to be "ratified" unless a plaintiff can show that the removal provision harmed him. 141 S. Ct. at 1787–88.

The Trusts read *Collins* more narrowly. They say it is distinguishable because there the agency action was *initiated* "by an acting director" who was removable at will by the President; only later was it *implemented* by his improperly insulated

successors. D.I. 384, at 12. By contrast, this case was "marred by a constitutional defect from its inception." *Id.* Because *Collins* is distinguishable, they claim that the Supreme Court's decision in *Seila Law* should apply instead. *Id.* at 10 (citing *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2220 (2020)). And that case, they contend, demands ratification.

Yet the Trust's argument fails to persuade. True, in *Collins* the agency action was initiated by a constitutionally structured agency. 141 S. Ct. at 1787. But there, the harm caused by the agency action "continued … [under] a succession of [improperly insulated] Directors." So the Court considered whether their subsequent acts, implementing the initial action, should be set aside. And because all the directors "were properly appointed" it concluded there was "no reason to regard any [of their] actions … as void." So too here: all of the Bureau's directors were correctly appointed.

In any case, *Collins* was clear that *Seila Law* does *not* always demand ratification where an agency director is insulated from presidential removal. *Id.* (clarifying that the Court said "no such thing" in that case).

Still, one can reasonably disagree about the scope of *Collins*. Justice Gorsuch's concurrence said as much, noting that the Court's opinion raised an "important question" about how lower courts should resolve "the next" agency-insulation suit. *Id.* at 1799 (flagging that the Court's ruling may be a "product of its unique context").

Plus, the need for ratification after *Collins* is an issue in ongoing appeals across the country. *See* Appellant's Supp. Letter Br., *CFPB v. All Am. Check Cashing, Inc.*, No. 18-60302, (5th Cir. Dec. 17, 2021) (en banc) ("*Collins* … held that a party

demonstrates remediable injury whenever 'the President might have replaced the Director absent the removal restriction.'"); Appellant's Reply Br., *Integrity Advance, LLC v. CFPB*, No. 21-9521 (10th Cir. Sept. 3, 2021) (relying on Justice Gorsuch's *Collins* concurrence to limit the decision's scope). That litigation suggests that there is room for reasonable disagreement and thus supports an interlocutory appeal here.

*3. Advancing termination of the litigation.* Finally, certifying an appeal would materially advance this case by potentially "eliminat[ing] the need for a trial." *Orson, Inc.*, 867 F. Supp. at 322. If the Third Circuit disagrees with my reading of *Collins*, I must dismiss this suit as untimely, ending this case.

## IV. I STAY THIS CASE PENDING APPEAL

Having certified an appeal to the Third Circuit, I may stay this case pending that appeal. 28 U.S.C. § 1292(b). That discretion is part of my "inherent" authority to manage my docket to preserve "time and effort for [myself], for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).

Here, I exercise that discretion and stay this case. A stay ensures that the parties will not waste their resources on discovery. Plus, it guards against government overreach: If the Trusts are right that the Bureau lacks authority to bring this enforcement action, it may not bring the judicial process to bear on them. That protection would be undercut if the Bureau could subject the Trusts to months of discovery while their appeal is pending.

* * * * *

This case raises two novel, important, and dispositive issues. So I certify both for interlocutory appeal to the Third Circuit. And to avoid needless expense in the meantime, I stay this case.

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CONSUMER FINANCIAL
PROTECTION BUREAU,

*Plaintiff*,

v.

No. 1:17-cv-1323-SB

NATIONAL COLLEGIATE MASTER
STUDENT LOAN TRUST et al.

*Defendants*.

---

Carolyn I. Hahn, Colin T. Reardon, Gabriel S.H. Hopkins, Jane M.E. Peterson, Stephen C. Jacques, Tiffany Hardy, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, D.C.

*Counsel for Plaintiff*.

Daniel M. Silver, MCCARTHER & ENGLISH LLP, Wilmington, DE; Megan Ix Brison, Michael A. Weidinger, PINCKNEY WEIDINGER URBAN & JOYCE LLC, Wilmington, DE.

*Counsel for Defendants*.

---

**MEMORANDUM OPINION**

December 13, 2021

---

BIBAS, *Circuit Judge*, sitting by designation.

Sometimes litigation is a moving target. Legal rules can change while the parties are battling it out. Earlier this year, the National Collegiate Student Loan Trusts successfully argued that the Consumer Financial Protection Bureau's suit against them was untimely. This Court dismissed the case without prejudice, relying on then-prevailing precedent. But then the Supreme Court announced a new rule. And the CFPB renewed its suit. Applying the new rule, at least on the complaint before me, this case is timely.

Plus, the Trusts say the CFPB lacks authority to sue them because they are not "covered persons" under the Consumer Financial Protection Act. But they "engaged in" servicing loans and collecting debt through their contractors, so they fall within the statute. I must thus let the CFPB's case proceed.

## I. BACKGROUND

In 2017, the CFPB sued the Trusts for engaging in forbidden debt-collection and litigation practices. First Am. Compl., D.I. 362 ¶¶ 1–2. Now the Trusts move to dismiss. Understanding that motion requires us to take a whistle-stop tour through both this protracted enforcement action and the structure of the CFPB.

### A. The Trusts and the CFPB's enforcement

The Trusts were set up to securitize student loans. They bought a pool of 800,000 private loans, then sold notes secured by that pool to investors. *Id.* ¶¶ 27, 34. As students repaid their loans, the investors would take a cut. D.I. 54, at 4. Just like any other securitization, the value of the notes depended on the riskiness of the

underlying asset: the more students default on their loan payments, the less valuable the notes.

Thus, the Trusts have a powerful incentive to ensure that students do not miss loan payments. Since the Trusts have no employees, they collect debt and service the loans through third parties. First Am. Compl. ¶ 29.

To that end, in 2009 the Trusts contracted with a special servicer to collect "past-due and defaulted student loans" and to do "collections litigation." D.I. 54, at 5. The special servicer, in turn, entered into agreements with "subservicers," who would "conduct[] collections" and "oversee[] various law firms that [would] file collection lawsuits against borrowers in the name of the Trusts." *Id.*; *see* First Am. Compl. ¶¶ 38–44.

But the subservicers soon attracted the attention of the CFPB. After a lengthy investigation, it found that the subservicers had "executed and notarized deceptive affidavits" and "filed … collections lawsuits lacking" key evidence. First Am. Compl. ¶¶ 49–50. The CFPB concluded that they engaged in unfair and deceptive debt-collection practices. D.I. 54, at 1–2.

So in 2014, the CFPB started administrative proceedings against the Trusts. Though the parties reached a settlement and asked the Court to enter a consent decree, the Court declined. D.I. 272. That forced the CFPB to sue.

**B. The structure of the CFPB and the Trusts' first motion to dismiss**

But midway through this litigation, the Supreme Court injected a new issue. Since its creation in 2008, the CFPB had been headed by a single director, insulated from removal by the President. Yet the Court said that structure "violate[d] the separation

of powers." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197, 2209 (2020). So it severed the removal restriction, leaving the rest of the statute intact.

That ruling implicated this enforcement action, which the CFPB filed in 2017 while headed by an improperly insulated director. Aware that such a director may have lacked the power to bring an enforcement action, a new director (now removable at will by the President) ratified the suit to cure any defect. D.I. 308-1.

But earlier this year, Judge Noreika ruled that the ratification came too late to save this suit. D.I. 359, at 8–14. All CFPB enforcement actions must be brought within three years of the date on which it discovers the violation. 12 U.S.C. § 5564(g)(1). Yet here, the CFPB admitted that "ratification … came more than three years after the date of discovery." D.I. 356, at 40:20–21. Plus, it could not show that the statute-of-limitations clock was extended by equitable tolling. So Judge Noreika dismissed the suit without prejudice, giving the CFPB another chance to explain why its suit was timely. D.I. 360.

After that ruling, the CFPB amended its complaint. And the Trusts brought this motion to dismiss, arguing that the new complaint suffered from the same timeliness defect as the first one. D.I. 367, at 7–11. They also contend that the Trusts do not count as "covered person[s]" under the Act and so cannot be targets of CFPB enforcement. *Id.* at 11; 12 U.S.C. § 5481(6).

To survive a motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). I must accept all

allegations in the complaint as true and draw all inferences in favor of the nonmoving party. *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

## II. THIS SUIT IS NOT YET TIME BARRED

The Trusts say the CFPB failed to ratify this suit before the statute-of-limitations clock ran out. But this assumes that unconstitutional removal protections automatically void agency action. And earlier this year, the Supreme Court rejected that premise. Thus, the CFPB stopped the clock when it sued. So on the compliant now before me, the suit is timely filed.

### A. There was no need for the CFPB to ratify this suit

The CFPB brought this suit while it was unconstitutionally structured. Back then, courts saw actions brought by improperly structured agencies as "ultra vires" and so void. *Collins v. Yellen*, 141 S. Ct. 1761, 1795 (2021) (Gorsuch, J., concurring in part). And void actions cannot stop the statute-of-limitations clock. Thus, to save the suit, an agency had to cure the constitutional defect, then ratify the action before the clock ran out. Here, ratification happened too late. So Judge Noreika dismissed this lawsuit.

Yet earlier this year, the Supreme Court undercut that reasoning. *Id.* at 1788 (majority opinion). It held that an unconstitutional *removal* restriction does not invalidate agency action so long as the agency head was properly *appointed*. Such an agency head has "authority to carry out the functions of the office." *Id.* So the agency's actions are not "void" and do not need to be "ratified," unless a plaintiff can show that the removal provision harmed him. *Id.* Put differently, he must show that the agency

action would not have been taken but for the President's inability to remove the agency head. *Id.*

That is not the case here. This suit would have been filed even if the director had been under presidential control. It has been litigated by five directors of the CFPB, four of whom were removable at will by the President. D.I. 377, at 2. And the CFPB did not change its litigation strategy once the removal protection was eliminated. This is strong evidence that this suit would have been brought regardless. Thus, the CFPB's initial decision to bring this suit was not ultra vires.

**B. At this stage, I may not decide whether this suit is time barred**

Because the decision to bring this suit was a valid agency action, it is not untimely if it was *filed* within three years of the date on which the CFPB discovered the alleged violation. 12 U.S.C. § 5564(g)(1).

The Trusts argue that even under this test, the suit is time barred. The CFPB sued on September 18, 2017. Yet the Trusts say, the CFPB had discovered the alleged misconduct by September 4, 2014, when it issued a civil investigative demand asking the Trusts for information about possible violations. D.I. 367, at 19. If true, this suit is time barred.

But the Trusts' argument is premature. On this motion to dismiss, I may consider a statute-of-limitations defense only if "the face of the complaint demonstrates that the plaintiff's claims are untimely." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (internal quotation marks omitted). Otherwise, the defendant would be forced to state facts necessary to anticipate and overcome an affirmative defense. *Id.*

Yet the Trusts fall afoul of this rule by relying on a civil-investigative-demand letter outside the complaint. *See* D.I. 302-3. Because I may not consider that letter, the Trusts' argument fails. Even if I *could* look at the letter, it does not unambiguously show that the CFPB knew about the alleged violations by September 4, 2014. The letter states that its purpose is to "determine whether [the Trusts] … engaged [in] … unlawful acts." *Id.* at 4. Such an investigation would have been pointless if the agency already knew about the Trusts' alleged misconduct.

The Trusts may still try to make out a statute-of-limitations defense, but that will have to wait until summary judgment.

### III. The Trusts Are "Covered Persons" Under the Consumer Financial Protection Act

The Trusts argue that the CFPB cannot bring an enforcement action against them because they are not "covered persons" as required under the Act. But this theory is undercut by the statute's text: the Trusts "engage in" servicing and collecting debt.

Start with the text. The CFPB may bring enforcement actions to "prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5531(a). Thus, it may sue only a "covered person" or a "service provider." The CFPB does not argue that the Trusts are "service provider[s]." *See* First Am. Compl. ¶ 8. So this suit may only proceed if they are "covered person[s]": "person[s] that engage[] in offering or providing a consumer financial product or service." 12 U.S.C. § 5481(6).

The CFPB argues that the Trusts qualify because they "engage[] in" providing some of the "financial product[s] or service[s]" listed in the Act: "servicing loans,

including acquiring, purchasing, selling, brokering, or other extensions of credit" and "collecting debt." *Id.* § 5481(6), (15)(A)(i), (x); First Am. Compl. ¶ 8. More precisely, it claims that the Trusts "engage in regular servicing of … loans" and "debt-collection activities through … [its] subservicers." *Id.* ¶¶ 35–36.

The Trusts do not deny that their subservicers collected debt or serviced loans. Instead, they contend that the CFPB cannot hold them liable for those actions. D.I. 367, at 13. The Trusts characterize themselves as "passive securitization vehicles … [that] take no action related to the servicing of student loans or collecting debt." *Id.* at 12.

So this dispute boils down to the breadth of the word "engage." Does a person "engage" in an activity if he contracts with a third party to do that activity on his behalf? Yes.

"Engage" means to "to embark in any business" or to "enter upon or employ oneself in an action." *Engage* (def. 16), Oxford English Dictionary (2d ed. 2000); *see also Engage*, Black's Law Dictionary (11th ed. 2019) ("To employ or involve oneself; to take part in; to embark on.").

That definition is broad enough to encompass actions taken on a person's behalf by another, at least where that action is central to his enterprise. Thus, if a dairy farmer contracts with a farmhand to milk his cows and never does that job himself, he is still employed in or in the business of milking cows.

So too here. The Trusts "embark[ed] in [the] business" of collecting debt and servicing loans when they contracted with the servicers and subservicers to collect their

debt and service their loans. Indeed, the CFPB alleges that the unfair and deceptive debt-collection practices happened in lawsuits brought on behalf of the Trusts, with the "relevant Trust … named [as the] plaintiff in the action." First Am. Compl. ¶ 37. Those suits could have proceeded only with the Trusts' involvement: with narrow exceptions, "a party … must assert his own legal rights and interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (internal quotation marks omitted). The subservicers could not have collected any debt without the Trusts' say-so.

True, the subservicers were independent contractors and not Trust employees. D.I. 302-1 § 17. But that is not dispositive. Debt collection and loan servicing are core aspects of the Trusts' business model. If they did not enforce debtors' obligations, their pool of loans would be less valuable, as would the notes they sell to investors. The Trusts cannot claim that they were not "engaged in" a key part of their business just because they contracted it out. *Cf. Barbato v. Greystone All., LLC*, 916 F.3d 260, 266–68 (3d Cir. 2019) (finding that a "passive debt owner" counted as a "debt collector" under the Fair Debt Collection Practices Act when it contracted with a third party to collect debt on its behalf).

Plus, if Congress wanted to allow enforcement against only those who *directly* engage in offering or providing consumer financial services, it could have said so. *See, e.g.*, 12 U.S.C. § 5481(15)(A)(vii)(I) (exempting some merchants from "covered person" status where they deal in "nonfinancial good[s] or service[s] sold *directly* … to the consumer").

Pushing back, the Trusts note that the Act expressly enumerates when a "related person" may be sued based on his relationship to a covered person. D.I. 367, at 14 (citing 12 U.S.C. § 5481(25)). That provision, they reason, displaces common-law vicarious liability. Maybe so. But because the Trusts *themselves* count as covered persons, I need not decide whether a non-covered-person principal can ever be held vicariously liable for the acts of his covered-person agent.

* * * * *

The Trusts argue that the CFPB was powerless to file this suit and that it filed too late. But both arguments fail. On the complaint now before me, this suit was timely filed. And the CFPB may sue the Trusts because they are "covered persons" under the Consumer Financial Protection Act. Thus, this enforcement action may proceed.

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CONSUMER FINANCIAL
PROTECTION BUREAU,

*Plaintiff*,

v.

No. 1:17-cv-1323-SB

NATIONAL COLLEGIATE MASTER
STUDENT LOAN TRUST et al.

*Defendants*.

**ORDER**

1. I **DENY** Defendants' Motion to Dismiss [D.I. 366]. The CFPB may proceed with its enforcement suit.

2. I **ORDER** the parties to confer and submit a proposed scheduling order by Monday, January 3, 2022. The scheduling order must follow this template: https://www.ded.uscourts.gov/sites/ded/files/Scheduling%20Order.pdf.

Dated: December 13, 2021

UNITED STATES CIRCUIT JUDGE